had no knowledge as to whether it was retained by him or turned back to the company. After the discovery of the fact that McKinley had secured the money from the corporation he surrendered the stock which he had purchased and gave securities to guarantee the payment of the amount due by him. He was retained in the employ of the company until 1918 when he resigned. When he left the company all of the securities which he had given, including the land, were turned back to him. There is no evidence that the securities which were given back to him were worthless or that the taxpayer corporation made any effort to realize on such assets before they were turned back to McKinley or to ascertain the value thereof. There is no evidence that the assets given as security were not sufficient to save the taxpayer from loss if it had undertaken to realize thereon. A taxpayer is not permitted voluntarily to surrender securities not known to be worthless and given for the purpose of protecting it from loss on an indebtedness and charge off the debt. The fact that McKinley surrendered the stock on which he had paid $10,000, the fact that all the property which he had given for the purpose of indemnifying the taxpayer against loss was surrendered to him voluntarily when he left the company, and the fact that the taxpayer had no knowledge as to the value of the assets and made no effort to realize thereon, lead the Board to the conclusion that there was no actual bona fide debt existing when the amount was charged off on the books. The taxpayer is, therefore, not entitled to a deduction on account of a debt ascertained to be worthless.

---

Appeal of **DAVID SCHWARTZ CO.,
INC.**                           Docket No. 1679.

Submitted March 26, 1925; decided April 7, 1925.

*David Schwartz*, president of the taxpayer company, for the taxpayer.

*Edward C. Lake, Esq.*, for the Commissioner.

Before GRAUPNER, LANSDON, and LITTLETON.

This is an appeal from a determination by the Commissioner of a deficiency of $343.69 in income tax for the calendar year 1919. Only a part of this amount is in controversy. The amount here involved is that portion of the deficiency resulting from the Commissioner's disallowance of a deduction of $1,000 included in an amount claimed in the taxpayer's income-tax return as a charitable contribution but now asserted as an ordinary and necessary expense. This deduction being questioned by the Commissioner, it was contended by the taxpayer that the sum of $1,000 represented an amount advanced to a firm in Roumania for the purpose of opening a branch of the taxpayer company in that country, and that, owing to the fact that this amount was listed in the cash book

immediately following an item of $1 designated "charity," the taxpayer's bookkeeper, in preparing the 1919 income-tax return, erroneously included the $1,000 so advanced under the heading of "charity." From the documentary evidence and oral testimony of the president of the taxpayer company at the hearing of the appeal, the Board makes the following

### FINDINGS OF FACT.

1. The taxpayer is a New York corporation, engaged in the cotton converting business, with its principal office at 105 Franklin Street, New York, N. Y.

2. In 1919, the taxpayer entered into negotiations with the firm of Froim Schwartz in Roumania, through the representative of the firm in this country, with the intention of opening a branch office in that country and having Froim Schwartz as its representative there. In furtherance of the agreement entered into, the taxpayer in October, 1919, advanced to Froim Schwartz $1,000, for the purpose of opening and equipping a branch office in Roumania. In 1920 the president of the taxpayer company went to Roumania in connection with the branch office of his company there and, after an investigation, deemed it inadvisable to continue business relations with the Roumanian firm and in consequence severed the relations. The $1,000 advanced had been expended by the Roumanian firm in opening and equipping a branch office of David Schwartz Co., Inc.

### DECISION.

The determination of the Commissioner is approved.

---

Appeal of **RICHARDS & BRENNAN CO.**        Docket No. 36.

Submitted March 25, 1925; decided April 8, 1925.

*Henry H. Bond, Esq.*, for the taxpayer.
*A. Calder Mackay, Esq.*, for the Commissioner.

Before GRAUPNER, LANSDON, and LITTLETON.

The above entitled appeal came on for hearing before the Board upon the issues appearing in the pleadings.

Previous to the hearing, and on application of the taxpayer, a subpoena was issued by the Board calling upon the Commissioner of Internal Revenue to produce the following documents:

(1) The return of the taxpayer for the fiscal years ending November 30, 1919, and November 30, 1920, and all correspondence, Revenue Agents reports, memoranda and other papers relating in any way to the assessment of said taxes for said years.

(2) The so-called comparative data sheets prepared either in the Special Assessment Section of the Income Tax Unit, or in the Review Division of the Solicitor's office upon the basis of which the Unit denied the taxpayer's application for assessment under the so-called relief sections, together with all other